**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PEDRO MARTI,                     :
                                 :     Civil Action No. 05-2344 (JBS)
        Petitioner,              :
                                 :
        v.                       :     **OPINION**
                                 :
WARDEN JOHN NASH,                :
                                 :
        Respondent.              :

**APPEARANCES**:

| | |
|---|---|
| Petitioner pro se | Counsel for Respondent |
| Pedro Marti | Irene E. Dowdy, Esquire |
| F.C.I. Fort Dix | Asst. U.S. Attorney |
| P.O. Box 38 | 402 East State Street |
| Fort Dix, NJ 08640 | Suite 430 |
| | Trenton, NJ 08608 |

**SIMANDLE**, District Judge

   Petitioner Pedro Marti, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent is Warden John Nash.

---

   [1] Section 2241 provides in relevant part:

   (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
   (c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

I.  BACKGROUND

Petitioner presently is in custody serving a 120-month sentence of imprisonment, to be followed by five years' supervised release.  In connection with its security designation and custody classification procedures, see Bureau of Prisons Program Statement 5100.07, Security Designation and Custody Classification Manual, the Bureau of Prisons has assigned to Petitioner a Public Safety Factor of "Greatest Severity." Petitioner contends that this Public Safety Factor was applied to him based upon a kidnapping charge that was dropped after investigation.

Petitioner contends that the application of this Public Safety Factor to him is "illegal" and in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments.  This Court construes Petitioner's allegations as a claim that application of the Public Safety Factor deprives him of due process in violation of the Fifth Amendment.

Respondent has filed a Motion [Docket Entry No. 6] to Dismiss, arguing that this Court lacks jurisdiction to address Petitioner's claim under § 2241.  Respondent contends that Petitioner's claim is a challenge to his conditions of confinement which must be pursued as a civil action.  Respondent also argues that Petitioner has failed to exhaust his

administrative remedies.  Petitioner has not responded to the Motion to Dismiss.

## II.  ANALYSIS

A.  Jurisdiction

The Court of Appeals for the Third Circuit addressed the scope of § 2241 jurisdiction most recently in Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), in which a federal prisoner sought to use § 2241 to challenge BOP regulations governing pre-release transfer to Community Corrections Centers.  There, the Court of Appeals began its analysis by reiterating its prior holdings that § 2241 is an appropriate vehicle for a federal prisoner to challenge the "execution" of his sentence, acknowledging, however, that "the precise meaning of 'execution of the sentence' is hazy."  432 F.3d at 241-42.

In attempting to decipher the meaning of "execution of the sentence," the Court found cases decided in the wake of Preiser v. Rodriguez, 411 U.S. 475 (1973),[2] lacking in guidance, as their "'central concern ... has been with how far the general remedy provided by [a civil action] may go before it intrudes into the more specific realm of habeas, not the other way around.'" Woodall, 432 F.3d at 242, n.5 (quoting Docken v. Chase, 393 F.3d

---

[2] Among the cases the Court found unhelpful was its own prior precedent, Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), on which Respondent relies here.

1024, 1028 (9th Cir. 2004)). Instead, the Court was persuaded by the reasoning of several Courts of Appeals that have interpreted § 2241 as encompassing a range of challenges to the manner of imprisonment. 432 F.3d at 242-44. For example, the Court cited with approval Jiminian v. Nash, 245 F.3d 144, 147 (2d Cir. 2001) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.").

Based on the reasoning of Woodall, this Court finds if properly can exercise jurisdiction over this § 2241 habeas petition challenging Petitioner's classification.

B. Exhaustion of Administrative Remedies

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.[3] See, e.g., Callwood v.

---

[3] The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days

4

Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973). The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000). See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if

---

of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request, or who wishes to challenge a DHO Report, may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response or of the date the DHO Report was delivered to the prisoner. 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. Id.

the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Similarly, exhaustion of administrative remedies is not required where the issue presented involves only statutory construction, because there is no need for an administrative agency to develop a factual record or to apply its expertise with respect to the circumstances presented.  See Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) (citing U.S. ex re. Marrero v. Warden, Lewisburg Penitentiary, 483 F.2d 656, 659 (3d Cir. 1973), rev'd on other grounds, 417 U.S. 653 (1974)).

Where exhaustion is required, a prisoner's procedural default in pursuing administrative remedies bars judicial review of a subsequent habeas corpus petition, absent the prisoner's demonstration of cause and prejudice for the default.  Moscato, 98 F.3d at 760-62, citing Davis v. United States, 411 U.S. 233 (1973).

> The Supreme Court has delineated what constitutes "cause for the procedural default: the petitioner must "show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the ... procedural rule." Murray v. Carrier, 477 U.S. 478, 488. ... With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his

>             entire trial with error of constitutional
>             dimensions.'" Id. at 494 ... (quoting United
>             States v. Frady, 456 U.S. 152, 170 ...)).
>             this standard essentially requires the
>             petitioner to show he was denied "fundamental
>             fairness" at trial."  Id.

Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000).

Here, Petitioner failed to exhaust his administrative remedies, as he appealed only through the BP-10 level of the Administrative Remedy Program.  Petitioner has failed even to argue cause and prejudice for his failure.  On this basis, the Motion to Dismiss must be granted.

C.   The Challenge to Petitioner's Classification

To the extent failure to exhaust can be excused, whether brought as a habeas petition or a civil action for declaratory relief, Petitioner's claim lacks merit.  As a general rule, an inmate does not have a liberty interest in assignment to a particular institution or to a particular security classification.  See, e.g., Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) ("We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right.  In Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), for example, no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate.  The same is true of prisoner classification and eligibility for

rehabilitative programs in the federal system.  Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); Montanye v. Haymes, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").

   Petitioner does not contend that his classification creates an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," so as to give rise to a constitutionally-protected liberty interest.  See Sandin v. Connor, 515 U.S. 472, 484-86 (1995).  Petitioner does not dispute the affidavit provided by Respondent that explains that Petitioner's classification only "affects the security level of the institution in which the Petitioner can be housed as it precludes placement in a minimum security facility.  It does not affect the Petitioner's eligibility for a Community Corrections Center or any other program in which he might otherwise be eligible for a reduction in his sentence."  (Decl. of Michael D. Tafelski at ¶ 7.)  The security classification does not affect the length of Petitioner's sentence.  Accordingly, no liberty

8

interest is affected by Petitioner's classification and the Petition must be denied on the merits.

### IV.  CONCLUSION

For the reasons set forth above, the Petition must be dismissed.  An appropriate order follows.

                                        **s/ Jerome B. Simandle**
                                        Jerome B. Simandle
                                        United States District Judge

Dated:  **March 27, 2006**